### CHARLES BECKER, TRUSTEE, *vs.* JOSIAH BAILIES.

The defendant attached as the property of *B* a musical instrument belonging to *B's* wife, the officer locking up the room containing it and taking the key. Soon after the building took fire and the instrument was damaged by water in extinguishing it. *B* requested the defendant, during the fire, to allow him to remove the instrument, which could have been done, but he refused, and afterwards refused to allow its removal to a dry place, and it became greatly damaged. Soon after the officer notified *B* that he relinquished the attachment upon it, but did not otherwise return or offer to return it. In trespass by *B*, as trustee for his wife, it was held—

1. That the notice of the relinquishment of the attachment did not amount to a return of the property nor to an unequivocal offer to return it.
2. That the defendant was liable for the damage done to the instrument after the relinquishment of the attachment.

The instrument was mortgaged at the time of the attachment to a third person for a certain sum. Held that this sum was not to be deducted from the value of the instrument in fixing the damages.

TRESPASS *de bonis asportatis*, with a count in trover; brought to the Superior Court in Fairfield County, and tried to the court (*Hitchcock, J.*) on the general issue, with notice that the property was taken as the property of the plaintiff by an officer upon an attachment in favor of the defendant against the plaintiff. The suit was brought by the plaintiff as trustee for his wife Catherine Becker. The court found the following facts:—

On the 11th of November, 1873, the defendant prayed out a writ of attachment against Charles Becker, the present plaintiff, demanding $100 damages, returnable before a justice of the peace of Bridgeport, and on the 12th of November put the same into the hands of Seymour Whiting, a sheriff of

the city of Bridgeport, directing him to attach all the personal
property contained in certain rooms belonging to the defend-
ant, and hired of him by said Charles Becker, and used by
him for a saloon; for the rent of which the suit was brought.
The sheriff thereupon attached all the personal property in
the saloon, the attachment being made on the 13th of
November.

Among the articles thus attached was a musical instrument
called an orchestrion, which was the property of Catherine
Becker, wife of said Charles, who bought it of Wallenbarger
& Gaunter, of New York, for $1,400, and mortgaged it back
to that firm to secure the payment of an unpaid part of
the purchase price; on which mortgage there was due at the
time of the attachment the sum of $575, for which the firm
held the individual notes of said Catherine, she having paid
from her own money all of the price except said balance of
$575.

The sheriff on attaching the property immediately took
possession of the orchestrion and other personal property,
together with the saloon, by direction of the defendant,
excluded said Charles therefrom, and afterwards held posses-
sion and control of the same as against said Charles and
Catherine Becker.

On the 14th of November, 1873, the sheriff left a copy of
the writ with said Charles in service; and in his return on
the writ, and in his endorsement on the copy, certified that he
had attached the orchestrion by virtue of the writ.

Between one and two o'clock in the afternoon of the 14th
of November, and after the copy of the writ had been left in
service with said Charles Becker, a fire broke out in the upper
part of the building in which the saloon was situated.   Water,
in large quantity, thrown by the firemen to extinguish the fire,
came down into the saloon, and to some degree upon the
orchestrion.

The defendant, the sheriff, and said Charles were all at the
fire.   Before any water had come through upon the orches-
trion, and before it had received any injury, said Charles
applied in good faith to the defendant, to be allowed to remove

it to a place of safety, and could have so removed it; but the defendant forbade him to do so, and said that nothing should be taken from the saloon. The said Charles also applied to the sheriff for permission to remove the orchestrion, but he also refused to let him do so.

The day after the fire, one of the mortgagees of the orchestrion applied to the defendant and to the sheriff for permission to remove it to a dry place, the instrument then being in a bad condition, but neither of them would allow it to be done.

While the fire was raging, and water was running down into the saloon and upon the instrument, said Charles procured cloth of some description, and applied to the sheriff to place the same over the orchestrion, which was done, but it afforded but a very imperfect protection from the water; and the instrument was in no way properly protected from the water by the defendant and the sheriff, who held possession and control of the same and of the saloon, though with reasonable effort it might have been removed from the saloon to a place of safety, or protected there.

The said Charles and Catherine Becker gave no further attention to the instrument. It remained in the saloon for a considerable time after the fire, and was nearly if not totally ruined. This damage was produced in part by the water running down upon it at the time of the fire, and by its being afterwards kept in a bad condition, damp and unprotected in the saloon.

None of the property attached by the sheriff is found by the court to have been the property of said Catherine except the orchestrion.

At the time of the fire and before the instrument was injured, it could have been removed to a place of safety without material damage, though it was somewhat bulky.

At the time of the attachment the instrument was worth $1,400, and said Catherine had paid for it in full, except a balance of $575.

Proceedings to replevy the instrument, and some other property attached, as being said Catherine's property, at the

time the fire occurred, were pending, and negotiations for some arrangement between the parties were going on, which might have been successful but for the fire.

At the time of the attachment and fire neither the defendant nor the sheriff knew that the orchestrion was the property of said Catherine, nor that Wallenbarger & Gaunter had any mortgage on it; nor did they take any means of acquiring knowledge on that subject.

Some time after the fire, and after great damage had been done to the orchestrion, the sheriff met said Charles on the street, and informed him that he relinquished the attachment on the instrument.   The sheriff kept the saloon locked, and gave said Charles no permission, opportunity or facility for entering the same, but held control and possession of the saloon and of the instrument himself, and merely informed him that he relinquished the attachment on the orchestrion.

The defendant claimed that on these facts the law was so that if he was liable at all, it was for such injury only as occurred to the orchestrion during the fire and up to the time of relinquishing the attachment by the sheriff.   He also claimed that he had a legal right to presume that after the fire the plaintiff would pursue his action to replevy the orchestrion; and that he was not holden for such care regarding it as he might have been under different circumstances; and that the instrument could not have been greatly injured from the time of the fire till the attachment was relinquished.   He also claimed that after the attachment was relinquished the orchestrion remained in the saloon at the risk of the plaintiff. The court held that the law was not so, and decided adversely to these claims of the defendant.

The plaintiff claimed that as trustee of said Catherine he was in this suit entitled to recover the full value of the orchestrion and interest from the date of its attachment.   But the court decided adversely to this claim, deducted the amount due on the mortgage to Wallenbarger & Gaunter, and rendered judgment for the plaintiff as such trustee to recover of the defendant the sum of $827, with interest on that sum from the 13th of November, 1873, and costs of suit.

The defendant moved for a new trial, for error of the court in its rulings upon the claims made by him as above. The plaintiff also filed a motion in error, assigning as error the ruling of the court that the amount due on the mortgage should be deducted from the value of the orchestrion in fixing the damages.

*D. B. Lockwood,* for the defendant.

1. The officer attached the property described in the writ as the property of Charles Becker, in whose possession it was at the time of the attachment and had been for a long time. No notice was given to him that the orchestrion was not the property of said Charles, nor was he notified that it belonged to any other person, nor was it specifically identified or demanded of him. The orchestrion being intermingled with goods which the court has found were the property of said Charles, no action would lie against the officer until he was notified that it was the property of another and had refused to deliver it. *Tufts* v. *McClintock,* 28 Maine, 424; *Wilson* v. *Lane,* 33 N. Hamp., 466; *Lewis* v. *Whittemore,* 5 id., 364, 366; *Bond* v. *Ward,* 7 Mass., 123; *Shumway* v. *Rutter,* 8 Pick., 443; *Sawyer* v. *Merrill,* 6 id., 478; *Smith* v. *Sanborn,* 6 Gray, 134; *Gilman* v. *Hill,* 36 N. Hamp., 311.

2. But if the officer would be liable at all he is not liable to the extent found by the court. He is liable only for the actual damage sustained at the time of relinquishing his attachment. Ordinary diligence is all that is required of a sheriff in taking care of property attached. *Moore* v. *Westervelt,* 27 N. York, 234; *Browning* v. *Hanford,* 5 Hill, 588, 591; Shearm. & Redf. on Neg., § 530; Story on Bailm., §§ 130, 620. And the defendant is not liable where the officer would not be.

3. A replevin suit to recover possession of the property attached had been commenced, and the plaintiff by pursuing his replevin writ might have obtained possession of all the articles attached. After the fire, however, he abandons his replevin suit, refuses to have anything to do with the articles attached, including the orchestrion, folds his hands and seeks

to charge the sheriff—or what is the same thing, the defendant—with the entire value of the property attached. This he cannot do. The officer had relinquished his attachment on the orchestrion. He had never moved it from the position in which he found it when he made the attachment, and the moment the attachment was relinquished the property was at the risk of the owner, and not at the risk of the officer. All the injury thereafter happening to the instrument was the result of the negligence of the owner, and this injury he cannot charge to the sheriff or the defendant. *Clark* v. *Smith*, 10 Conn., 1; *Palmer* v. *Gallup*, 16 id., 555.

4. The court did not err in holding that the amount due on the mortgage was to be deducted from the value of the property in fixing the damages. The value of the plaintiff's interest in the property was the value of the property after deducting the mortgage debt.

*H. S. Sanford*, for the plaintiff.

1. There was no offer to return the instrument. The officer simply stated that he relinquished the attachment. But if we put it in the most favorable light for the defendant, an offer without acceptance in cases like this ought to be held nugatory. If a trespasser should seize one's property without law or right, and should afterwards tender it back, it would appear to be no more than fair that one should have the option to receive or reject it. We submit that the rule of law requires the trespasser who has seized personal property to keep it and to pay for it, unless the owner is willing to take it back. And this view, we think, is supported by abundant authority. 1 Addison on Torts, § 541; *Cook* v. *Loomis*, 26 Conn., 483; *Gibbs* v. *Chase*, 10 Mass., 128; *Hanmer* v. *Wilsey*, 17 Wend., 92; *Otis* v. *Jones*, 21 id., 396; *Higgins* v. *Whitney*, 24 id., 379; *Hull* v. *Peters*, 7 Barb., 331; *Brewster* v. *Sullivan*, 38 N. York, 428.

2. The presumption of the pursuit of the proceedings in replevin seems preposterous. It would indeed be a novelty if one who has begun any suit whatever must follow it to judgment at his peril. How far the replevin proceedings had

gone does not appear. The writ certainly was never issued and could not issue without a hearing on the sufficiency of the bond after reasonable notice to the defendant. The present defendant knew, therefore, that the replevin suit had been dropped.

3 The judge below mistook the rule of damages. 1 Addison on Torts, § 540; Sedg. on Dam., 474, 482; 2 Greenl. Ev., § 276; *Churchill* v. *Watson,* 5 Day, 140; *Baldwin* v. *Porter,* 12 Conn., 484; *White* v. *Webb,* 15 id., 302; *Hurd* v. *Hubbell,* 26 id., 390; *Andrews* v. *Durant,* 18 N. York, 502; *Beecher* v. *Denniston,* 13 Gray, 354. The case should be remanded with directions to the Superior Court to correct this error alone and render judgment accordingly. 1 Swift Dig., 793.

LOOMIS, J. This is an action of trespass and trover for unlawfully taking, by writ of attachment, a musical instrument, called an orchestrion, belonging to the plaintiff's wife. The defendant moves for a new trial because the court overruled sundry claims made by him for a mitigation of the damages.

The plaintiff, on the other hand, brings his motion in error, on the ground that the court mistook the law in deducting from the value of the instrument the amount of a mortgage upon it, due from the plaintiff to a third person.

The grounds upon which the defendant's motion for a new trial is based are rendered wholly untenable by the facts found by the court.

The instrument in question was never returned to and accepted by the plaintiff, or applied in any way for the use, benefit or advantage of the plaintiff, nor was there any unequivocal offer to return the property; and if there had been, its damaged condition, occasioned in great measure by the fault of the defendant, would have excused its rejection by the plaintiff. The chief point made by the defendant was that the relinquishment of the attachment placed the property at once at the risk of the owner; and that the judgment should include only such damage to the property as had been

occasioned prior to that time. This claim, we think, involves an erroneous assumption both of law and of fact. Without, however, discussing the law, it will be a sufficient answer to say that the relinquishment referred to did not amount either to a return of the property or to an unequivocal offer to return it. The record states the facts bearing on this point as follows:—" Some time after the fire, and after great damage had accrued to the orchestrion, the sheriff met said Charles on the street, and informed him that he relinquished the attachment on said instrument. The sheriff kept said saloon (where said instrument was situated) locked, and gave said Charles no permission, opportunity or facility for entering the same, but held control and possession of said saloon and instrument himself, and merely informed him that he relinquished the attachment on said orchestrion."

The record also shows that the defendant, at the time of the fire, unreasonably refused the special request of the plaintiff to remove the instrument to a place of safety, which might have been done; and the day after the fire, upon request of the mortgagees, he also refused to remove it to a dry and suitable place. It is very clear therefore that the finding leaves no ground for granting the defendant's motion.

We proceed next to inquire whether the court erred in deducting from the ascertained value of the instrument the amount of the mortgage due from the plaintiff's wife to Wallenbarger & Gaunter.

This question is fully answered by the decision of this court in *White* v. *Webb*, 15 Conn., 302, which was an action of trespass and trover brought by a second mortgagee in possession of the mortgaged chattels against an officer who took them on a writ of attachment. There was a prior mortgage on the same property then outstanding and unsatisfied, which the defendant claimed should be deducted; but the court held otherwise, and based the decision upon the following well established principles:—"In actions of trover and trespass, for property taken and converted by the defendant, where there is no malicious motive on the part of the defendant, but he takes the property under a claim of right, and the real

dispute is as to the title, the rule of damages is the value of the property at the time of the conversion or taking, and the interest on that sum to the time of judgment. If however the suit is brought by a bailee or special property man, against the general owner, then the plaintiff can recover the value of his special property only; but if the writ is against a stranger, then he recovers the value of the property and interest, according to the general rule, and holds the balance beyond his own interest in trust for the general owner."

In the decision complained of by the plaintiff there is manifest error so far as the damages are concerned, and the judgment is reversed to that extent and the case remanded.

The defendant's motion for a new trial is denied.

In this opinion the other judges concurred.